IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

MARK MCINTIRE,                              )
                                            )
        Plaintiff,                 )
                                            )
v.                                          )   Case No. 13-3210-CV-S-ODS-SSA
                                            )
CAROLYN W. COLVIN,                          )
Acting Commissioner of Social Security,     )
                                            )
        Defendant.                 )

ORDER AND OPINION AFFIRMING
<u>COMMISSIONER'S FINAL DECISION DENYING BENEFITS</u>

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability insurance benefits and supplemental security income. The Commissioner's decision is affirmed.

I. BACKGROUND

A complete summary of the record is not necessary; the following will suffice for purposes of this appeal. Plaintiff was born on December 25, 1962, and has a high school education. R. 21. He has prior work experience as a roofer, commercial groundskeeper, gun welder, and steel worker. R. 49. Plaintiff contends he became disabled on May 9, 2009, due to congestive heart failure, coronary artery disease, sacroiliac joint dysfunction, generalized anxiety disorder, depression, personality disorder, and a history of seizures.

In July 2009, Plaintiff presented to Lynn Bridge, A.R.N.P., with complaints of neck pain. R. 632. Ms. Bridge assessed Plaintiff with muscle spasms in the left neck and shoulder. R. 634.

In August 2009, Plaintiff presented to Gerard M. Librodo, M.D., with complaints of neck and back pain. R. 732. Dr. Librodo reported that Plaintiff had normal gait and

station, and no decreased range in motion. R. 734. Dr. Librodo recommended a CT scan, which revealed normal results. R. 741. There was no evidence of spinal stenosis, protruding disc, or any other extradural mass. R. 741.

In November 2009, Plaintiff completed a function report and reported that his daily activities included picking up the yard, mowing the grass, and walking. R. 16, 222, 224-25, 238, 282. In December 2009, Plaintiff saw Ms. Bridge with complaints of back pain. R. 823. A straight-leg raising test of the right leg was positive, and a straight-leg raising test of the left leg was negative. R. 824.

In January 2010, Plaintiff presented to Lisa Hermes, M.D. R. 942-43. Upon examination, Dr. Hermes noted Plaintiff had active and passive range of motion of the hips revealed decreased right hip external range of motion. R. 943. Inspection of the lumbar spine revealed fairly good preservation of lumbar lordosis. R. 943. Active range of motion of lumbar spine revealed decreased flexion, although asymptomatic. Dr. Hermes concluded that Plaintiff had right sacroiliac joint dysfunction. R. 943.

In February 2010, Plaintiff presented to Sitha Miller, M.D., with complaints of back pain. R. 769. Dr. Miller noted that Plaintiff had full range of motion of all his extremities, except for his thoraco lumbar. R. 770. Dr. Miller's notes indicate that a normal forward flexion is between 0-90 degrees and Plaintiff's range was 90 degrees. It also indicated that 0-30 degrees was normal for extension, lateral flexion, and rotation; Plaintiff's range was 10 degrees, 25 degrees bilaterally, and 25 degrees bilaterally, respectively. R. 770. Plaintiff's gait was normal and his strength was 5/5 for upper and lower extremities. R. 770. Plaintiff had a negative straight leg test, bilaterally. R. 770. In April 2010, Ms. Bridge noted that Plaintiff's muskoskeletal system was normal. R. 839.

In May 2011, Plaintiff underwent a physical examination with Dale Garrett, M.D. R. 947. Dr. Garrett opined that Plaintiff's spine had normal inspection, flexion, extension, side bend, and rotation. R. 948. Plaintiff's lower extremities were normal. R. 948.

In August 2011, Ms. Bridge opined that Plaintiff had normal gait and balance. R. 912. That same month, Plaintiff's physical therapist, Jason Konrade, completed a Physical Therapy Assessment of Functional Mobility-Debility form. R. 960-61. Mr.

2

Konrade noted that Plaintiff had "questionable vocation ability secondary to his multiple health restrictions" as well as difficulty with manual labor. R. 961. Mr. Konrade opined that Plaintiff could lift 25 pounds occasionally and 10 pounds frequently. R. 962. He could stand and/or walk for less than an hour throughout an 8-hour workday. R. 962. Mr. Konrade opined that Plaintiff could sit for two hours total in an 8-hour workday, and was limited in his ability to push/pull. R. 962. He also opined Plaintiff could occasionally climb, balance, stoop, and crouch, and could never kneel or crawl. R. 963. Mr. Konrade opined that Plaintiff should avoid any exposure to extreme cold, extreme heat, dust/fumes, vibration, and heights. R. 963.

A State agency medical consultant opined that Plaintiff has sacroiliac joint syndrome and a history of congestive heart failure, and could perform work at the sedentary exertional level with some postural and environmental limitations. R. 792-99, 851. The consultant opined that Plaintiff could occasionally and frequently lift and/or carry 10 pounds; stand and/or walk for a total of at least 2 hours in an 8-hour workday; and sit for a total of about 6 hours in an 8-hour workday. R. 793. Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. R. 794. He also opined that Plaintiff should avoid extreme cold, extreme heat, vibration, and fumes. R. 796.

An administrative hearing was held on September 1, 2011. R. 42. Among other things, Plaintiff testified that he "usually just walk[s] to wherever [he] needs to go," could walk for 12 blocks, sit or stand for 20-30 minutes at a time, and lift 100 pounds. R. 48, 51-52. Plaintiff indicated that he mowed the lawn using a push mower. R. 53.

The administrative law judge ("ALJ") rendered her decision on October 21, 2011. R. 23. At step one of the five-step sequential process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since May 5, 2009, the alleged onset date. R. 13. At step two, the ALJ found Plaintiff had the following severe impairments: congestive heart failure, myocardial infraction status-post stenting and pacemaker/defibrillator, coronary artery disease, sacroiliac joint dysfunction, generalize anxiety disorder, depression, personality disorder, and a history of seizures. R. 13. At step three, the ALJ determined Plaintiff did not have a listed impairment. R. 14. For steps four and five, the ALJ concluded:

> [T]he claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday, but needs to be able to alternate between sitting and standing at least every 30 minutes. The claimant can occasionally stoop and climb ramps and stairs, but should never kneel, crouch, crawl, or climb ladders, ropes or scaffolds. Further, the claimant should avoid concentrated exposure to extreme cold, extreme heat, excessive vibration and irritants, and avoid even moderate exposure to operational control of moving machinery, unprotected heights and hazardous machinery. Additionally, the claimant is limited to simple, routine, and repetitive tasks and no public interaction, but can work around co-workers with only occasional interaction with co0-workers.

R. 15. Next, the ALJ found, based on the VE's testimony, that Plaintiff was unable to perform any past relevant work, but considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including price marker, routing clerk, and sub-assembler. R. 22. Finally, the ALJ concluded Plaintiff was not disabled. R. 23.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

Plaintiff makes several arguments, including that the ALJ's decision at step five was not supported by substantial evidence on the record as a whole. However, in the

4

main, Plaintiff's arguments are centered on the RFC assessment—Plaintiff argues the medical evidence does not support the ALJ's finding that Plaintiff can perform the lifting, prolonged sitting, and standing/walking required for light work. The Court concludes there is substantial evidence in the record to support the ALJ's RFC determination.

First, Plaintiff contends the ALJ improperly assigned partial weight to the State agency medical consultant's opinion. Among other things, the State agency medical consultant opined that Plaintiff could: lift 10 pounds occasionally and frequently; stand/walk for 2 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. The ALJ assigned partial weight to the opinion because: (1) the consultant did not examine Plaintiff, and (2) Plaintiff testified at the administrative hearing that he was able to walk wherever he needed to go, walk 12 blocks, sit or stand 20-30 minutes at a time, and lift 100 pounds. R. 18. The ALJ gave good reasons for assigning partial weight to the medical consultant's opinion. The ALJ was at the administrative hearing and was in a better position to assess Plaintiff's testimony on his walking abilities and compare it to the consultant's opinion as to the same matter. Further, the consultant's prediction that Plaintiff could only lift 10 pounds was contradicted by Plaintiff's own testimony that he could lift 100 pounds. R. 52. The ALJ is permitted to rely on Plaintiff's statements on his abilities over the opinion of a consultant, who at best saw Plaintiff on one occasion.

Next, Plaintiff argues the ALJ improperly weighed the opinion of Plaintiff's physical therapist, Mr. Konrade. A physical therapist is not an "acceptable medical source" but rather an "other" medical source of information that the ALJ must consider. *See Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003). "In determining what weight to give to 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistences found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005). Mr. Konrade opined that Plaintiff could lift and carry 25 pounds occasionally and 10 pounds frequently, stand and walk for less than an hour total in an 8-hour workday, and sit for 2 hours total in an 8-hour workday. R. 17, 962. The ALJ assigned partial weight to Mr. Konrade's opinion because it was based on Plaintiff's difficulties with manual labor. Plaintiff's Functional Report indicated that he picked up the yard, mowed, and walked. R. 16, 222, 224-25, 238, 282.

The Court concludes there is substantial evidence in the record to support the ALJ's RFC determination. The RFC stated that Plaintiff could lift up to 20 pounds occasionally and lift or carry up to 10 pounds frequently—this is supported by Mr. Konrade's opinion that Plaintiff could lift up to 25 pounds occasionally an lift 10 pounds frequently. Next, the RFC stated that Plaintiff could stand and/or walk for 6 hours out of an 8-hour workday. This is supported the medical evidence that showed Plaintiff had normal gait and station, no decreased range in motion, a normal muskoskeletal system, and a normal spine. R. 734, 741, 770, 839, 948. Plaintiff even testified he could walk wherever he needed to go and could walk 12 blocks. Finally, the RFC stated that Plaintiff could sit for six hours out of an eight-hour workday, but needed to be able to alternate between sitting and standing at least every 30 minutes. This is supported by the medical evidence showing that Plaintiff's muskoskeletal system was normal. R. 734, 741, 770, 839, 948. The ALJ also considered Plaintiff's own testimony that he could sit or stand 20-30 minutes at a time. R. 18. The ALJ properly discussed all the medical evidence in great length (including the opinions of Dr. Librodo, Dr. Hermes, Dr. Miller, Dr. Garrett, and Ms. Bridge) when making his RFC assessment, and also considered Plaintiff's own testimony about his functional limitations. R. 13-21. This was proper, as an RFC determination is "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863. The evidence of Plaintiffs actual daily activities and the medical evidence that existed were sufficient to support the ALJ's RFC determination.

## IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's physical RFC determination. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: February 19, 2014           UNITED STATES DISTRICT COURT